UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| LORALIE NOLET, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　Plaintiff,<br>　v.<br><br>CAWLEY & BERGMANN, LLP,<br><br>　　　　Defendant. | Case No.: 17-cv-1408<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Loralie Nolet is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family, or household purposes.

5. Defendant Cawley & Bergmann, LLP ("Cawley") is a debt collection agency with its principal offices located at 117 Kindermack Road, Suite 201, River Edge, NJ 07661

6. Cawley is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. Cawley is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes. Cawley is a debt collector as defined in 15 U.S.C. § 1692a.

**FACTS**

8. On or about March 2, 2017, Cawley mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Cavalry SPV I, LLC." The letter additionally listed the original creditor as "Sychrony Bank/Ashley Furniture." A copy of this letter is attached to this complaint as Exhibit A.

9. Upon information and belief, the alleged debt that Cawley was attempting to collect was incurred by use of an Ashley Furniture branded consumer credit card, used exclusively for the purchase of personal, family, or household items. (*See* https://www.ashleyfurniturehomestore.com/financing).

10. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

11. Upon information and belief, Exhibit A is a form debt collection letter used by Cawley to attempt to collect alleged debts.

12. Upon information and belief, Exhibit A is the first written communication that Cawley sent to Plaintiff regarding the alleged debt to which Exhibit A refers.

13. Exhibit A contains the following text:

> Unless you, the consumer, within thirty days after receipt of this notice, dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you, the consumer, notify us in writing within the thirty-day period that the debt, or any portion thereof, is disputed we will obtain verification of the debt or a copy of a judgment against you and a copy will be mailed to you by our office. Upon your written request within the thirty-day period, we will provide you with the name and address of the original creditor, if different from the current creditor.

2

14. The above language in Exhibit A is the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer. 15 U.S.C. § 1692g.

15. Exhibit A also contains the following settlement offers:

**Single Payment Option:**
- Take **$529.29** off the balance.
- Pay **$1,235.02** no later than **04/17/17**.
- Your account will be considered **"Settled in Full"** after we post your payment.*

**2 Month Payment Plan:**
- Take **$352.86** off the balance.
- Pay over 2 equal monthly installments of **$705.72**.
- First Payment due no later than **04/17/17** and every 30 days thereafter.
- Your account will be considered **"Settled in Full"** after we post your final payment.*

16. Further, below both the settlement offers and debt validation notice, Exhibit A contains the following note:

*Your payment must be received in our office within 45 days from the receipt of this letter, in good funds, or this offer will be null and void. Upon clearance of funds this debt will be considered settled in full. We are not obligated to renew this offer.

17. Cawley's timeline for accepting and making payments in accordance with the "2 Month Payment Plan" in Exhibit A is ambiguous, misleading and confusing to the unsophisticated consumer.

18. Exhibit A states in one place that the *first* payment must be made by a specified date that is approximately 45 days from the date printed on Exhibit A, and the *second* payment 30 days later, but later indicates that the *entire settlement amount* (i.e. both payments) must be received in Cawley's office within 45 days from the consumer's receipt of the letter.

3

19. Exhibit A indicates in the bullet points that the first installment of the "2 Month Payment Plan" is due "no later than 04/17/17 and every 30 days thereafter."

20. But Exhibit A also indicates in the note after the asterisk that the consumer's "payment must be received … within 45 days…," and that "Upon clearance of funds this debt will be considered settled in full."

21. Consequently, it is unclear whether only the first installment or both the first and second payments are due within 45-day period after Plaintiff's receipt of Exhibit A.

22. The unsophisticated consumer would be confused as to how much Cawley was requesting the consumer to pay at what time. *See, eg. Machnik v. RSI Enters.,* No. 17-CV-864, 2017 U.S. Dist. LEXIS 160772 (E.D. Wis. Sep. 29, 2017) (collection letter stating two different balances states a claim).

23. The consumer could reasonably read the section after the asterisk to mean that the consumer must actually make a payment within 15 days of the date of the letter in order to make the second "monthly" payment before April 17, 2017 (i.e. within the 45 day period). Certainly, the consumer would not expect Cawley or Synchrony to designate the debt as "settled in full" upon clearance of funds equaling only half of the settlement amount.

24. The section after the asterisk could also mean that the consumer must only make the first installment by April 17, 2017 and the second payment could be made 30 days afterward, even if that date is after April 17, 2017. The consumer has no way to know which is true.

25. If the consumer makes the first installment payment before April 17, 2017, and the second installment after April 17, 2017 but within 30 days of the first payment, the consumer would not know whether she had sent enough money to actually settle the account, due to the

4

possibility that Cawley or Synchrony had determined that the offer had expired for non-payment of the full settlement amount by April 17, 2017.

26. The consequences of misleading a consumer with respect to settling a debt are much greater than misleading about the amount of the debt. A payment of the entire debt would leave pennies or, at most, a few dollars left over for payment later. *See eg. Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000). Due to a few remaining dollars or cents of interest, however, Cawley or Synchrony could continue to collect the entire remaining balance of the alleged debt.

27. Additionally, the "Single Payment Option" in Exhibit A indicates that, in order to accept either settlement offer, Plaintiff must make a payment by 04/17/17.

28. If Exhibit A was actually mailed on March 2, 2017, the 30 day validation period identified in Exhibit A would end only a few days before the settlement offer in Exhibit A expires. *See* 15 U.S.C. § 1692g(a).

29. Exhibit A is confusing to the unsophisticated consumer because they demand a payment within the validation period or shortly thereafter, but do not explain how the validation notice and settlement "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

30. The unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offer in Exhibit A.

5

31. The consumer needs time to process the information contained in an initial debt collection letter before deciding whether to dispute, pay or take other action. This is the point of the 30 day period in 15 U.S.C. 1692g(a).

32. Prior to deciding whether to dispute a debt, a consumer may have to sort through personal records and/or memories to try to remember if the debt might be legitimate. She may not recognize the creditor – debts are freely assignable and corporations, especially banks, often change names.

33. Moreover, once a consumer sends a dispute in writing, the creditor is under no obligation to provide verification in any specific amount of time, or even to provide verification at all, so long as the debt collector ceases collection efforts until it does so. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997) ("Section 1692g(b) thus gives debt collectors two options when they receive requests for validation. They may provide the requested validations and continue their debt collecting activities, or they may cease all collection activities.")

34. The § 1692g validation period lasts for 30 days. It is the consumer's right to *request* verification until the end of the thirty day period. If the request is not made until the end of the thirty day period, the verification request would not be processed, researched by the creditor, and returned to the consumer until long after settlement offer payment deadline has expired. The consumer would be left with no time to review the verification and determine whether to accept the settlement offer.

35. The unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offers in Exhibit A. It is likely that the settlement offer would expire before the debt collector provides verification. The consumer would be left with little or no time to review the verification and determine whether to accept the settlement offer.

36. The effect of the settlement offer in the initial written debt communication is to discourage or prevent consumers from exercising their validation rights.

37. Defendant did not include explanatory language in Exhibit A. *See, eg Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997).

38. In order to preserve the settlement offer in the event of a written dispute, and to preserve the 30-day validation period itself, any explanatory language should make clear that a dispute will extend the settlement offer while the debt collector is in the process of complying with its obligation to verify the debt.

39. Plaintiff was confused by Exhibit A.

40. The unsophisticated consumer would be confused by Exhibit A.

41. Plaintiff had to spend time and money investigating Exhibit A and the consequences of any potential responses to Exhibit A.

42. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

43. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No.

16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

44. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

## COUNT I – FDCPA

45. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

46. The multiple-payment settlement offer in Exhibit A includes an ambiguous timeline that is actually or apparently contradictory as to when the final payment and the total amount of the settlement payment is actually due.

47. Exhibit A is misleading and confusing to the unsophisticated consumer.

48. Defendant violated 15 U.S.C. §§ 1692e and 1692e(10).

## COUNT II – FDCPA

49. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

50. The statement on Exhibit A: "Pay $1,235.02 no later than04/17/17" conflicts with and overshadows the debt validation notice, in that it demands a payment within the validation period or shortly thereafter, but does not explain how the validation notice and settlement "deadline" fit together. 15 U.S.C. § 1692g; *Bartlett*, 128 F.3d at 500.

51. Exhibit A is confusing, deceptive, and/or misleading to the unsophisticated consumer.

52. 15 U.S.C. § 1692g(b) states, in part:

(b) **Disputed debts**
…
Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

53. 15 U.S.C. § 1692e provides, in relevant part: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

54. 15 U.S.C. § 1692e(10) prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

9

55. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692g.

## CLASS ALLEGATIONS

56. Plaintiffs bring this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) between October 13, 2016 up to and including October 13, 2017, inclusive, (e) that was not returned by the postal service.

57. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

58. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendants complied with 15 U.S.C. § 1692e, 1692e(10), and 1692g.

59. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

60. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

61. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

62. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: October 13, 2017

**ADEMI & O'REILLY, LLP**

By: s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com